Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300

Michael J. Gershoni (Cal. Bar No. 311192)
  Michael.Gershoni@arnoldporter.com
Bridgette C. Gershoni (Cal. Bar No. 313806)
  Bridgette.Gershoni@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5000

*Attorneys for Plaintiff Nike, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br><br>GNARCOTIC LLC.<br><br>                    Defendant. | Case No. **2:22-cv-8765**<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114**<br><br>**(2) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**<br><br>**(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**<br><br>**(4) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**<br><br>**(5) Common Law Trademark Infringement and Unfair Competition**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Nike, Inc. ("Nike") for its Complaint against Defendant Gnarcotic LLC ("Gnarcotic") alleges as follows:

**PRELIMINARY STATEMENT**

1.      The Nike Dunk is one of the most iconic and influential sneaker designs of all time.  Released decades ago, the Nike Dunk has transcended sports and fashion and is heralded as one of the most collectible sneakers on the market today.

2.      While the Nike Dunk has helped pave the way for modern sneakerhead culture through limited releases of various colorways and collaborations, its consistent design is the common thread that has excited consumers for decades.  The iconic design represents the originality, authenticity, and creativity that is entwined in the DNA of sneaker culture.  That is why Nike must protect its Dunk design and related intellectual property from bad actors who confuse consumers and undermine the very DNA of authentic sneaker culture by promoting, copying, and selling Nike's designs as their own.

3.      Gnarcotic is an example of one such bad actor.  Gnarcotic has and continues to promote and sell Nike Dunk knockoffs in several colorways, as well as making unauthorized use of patterns that confusingly mimic Nike's iconic Elephant Print design.  For reference, the table below shows Nike's genuine sneakers and examples of Gnarcotic's knockoffs side-by-side:

| Genuine Dunks | Gnarcotic's Knockoffs |
|---|---|
|  |  |

| Genuine Dunks | Gnarcotic's Knockoffs |
|---|---|
|  | <br>Gnarcotic Butterfly Effect Orange/Black ("Gnarcotic v1 sneaker") |
|  | <br>Gnarcotic Butterfly Effect v2 "Concrete" (collectively with other colorways "Gnarcotic v2 sneakers") |
|  | <br>Gnarcotic Butterfly Effect v3 Orange/Black (collectively with other colorways "Gnarcotic v3 sneakers") |

2

4.      Gnarcotic's   conduct   constitutes   trademark   infringement,   false designation of origin, unfair competition, and trademark dilution.  And the damage to Nike from Gnarcotic's knockoffs is considerable.  Gnarcotic's knockoffs dilute Nike's famous trademarks and they confuse, and are likely to confuse, consumers as to the source, origin, affiliation, and/or sponsorship of the products, especially in the post-sale environment.  If not stopped, Gnarcotic's illegal conduct will undermine Nike's control over its brand, business reputation, and associated goodwill, which it has spent decades building.

5.      To be clear, Gnarcotic's theft of Nike's designs and associated goodwill was, and continues to be, intentional.  Since notifying Gnarcotic of its infringement in July of this year, Nike has attempted to reach a resolution with Gnarcotic that does not   involve   the   continued   theft   of   Nike's   designs.    During   these   discussions, Gnarcotic made representations that it would cease, among other things, selling products that infringe Nike's intellectual property, and these representations were a cornerstone of Nike's decision to continue its attempt to resolve this matter amicably.

6.      Yet, on November 21, 2022, any hope that Nike and Gnarcotic could reach an amicable resolution to Gnarcotic's infringement ended with Gnarcotic's announcement on its social media account that it intended to sell the "Gnarcotic SBs v2 'Concrete'" sneakers on Black Friday, as shown below.  Notably, in addition to infringing Nike's Dunk trade dress, Gnarcotic's "Concrete" colorway also infringes Nike's registered Elephant Print trade dress.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      7.      Prior to its planned release, Nike promptly sent Gnarcotic a second
17 cease-and-desist letter informing Gnarcotic that the Gnarcotic v2 sneakers continue
18 to infringe Nike's intellectual property rights in the Dunk and the Elephant Print
19 trade dress.

20      8.      In response, Gnarcotic informed Nike that it would not sell the
21 Gnarcotic v2 sneakers and that all images and references to the sale of this model
22 would be removed from Gnarcotic's website and social media accounts.  Simply put,
23 that did not happen.

24      9.      Instead, at least as of the day of filing this Complaint, images of the
25 Gnarcotic v2 sneakers continue to be used to market Gnarcotic's infringing footwear
26 to consumers on its website and social media accounts, as shown below.

27
28





**Gnarcotic Butterfly Effect v3 - Cement/Yellow Product Page**
**(last accessed Dec. 2, 2022)**

**Gnarcotic Instagram Post (last accessed Dec. 2, 2022)**

10.    Whether Gnarcotic merely changed the name of its sneakers to "Gnarcotic Butterfly Effect v3's" or is attempting to bait-and-switch its customers into believing that they will receive the Gnarcotic v2's in the "Cement" colorways is of no consequence.  As demonstrated throughout this Complaint, each version of Gnarcotic's sneakers infringe Nike's intellectual property rights in its iconic Dunk and Elephant Print designs.

11.    Nike cannot allow bad actors like Gnarcotic to confuse consumers by building a business on the back of Nike's most famous trademarks, as it has previously done and is continuing to do today with its alleged "v3" versions of its footwear.  Such illicit activity undermines the value of Nike's trademarks and the messages they convey.  Nike therefore brings this lawsuit to stop bad actors like Gnarcotic from making, sourcing, distributing, and selling knockoffs of Nike's products and illegally using Nike's most famous designs.

## THE PARTIES

12.    Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

13.    On information and belief, Gnarcotic LLC is a limited liability company organized under the laws of the State of Georgia with a principal place of business at 10001 Pioneer Blvd., Santa Fe Springs, California, 90670.

## JURISDICTION AND VENUE

14.    This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law of unfair competition. This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

COMPLAINT

15.    On information and belief, this Court may exercise personal jurisdiction over Gnarcotic at least because Gnarcotic resides in this District, Gnarcotic's principal place of business is located within this District, Gnarcotic does business in this District, and Gnarcotic has committed acts of infringement at issue in this Complaint in this District.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Gnarcotic resides in this District, Gnarcotic's principal place of business is in this District, Gnarcotic does business in this District, Gnarcotic is subject to personal jurisdiction in this District, and Gnarcotic has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

### A.    NIKE

17.    Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.

18.    Nike is the largest seller of athletic footwear and apparel in the world.

19.    Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees and sales representatives in virtually all countries around the world.

20.    Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

21.    As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights.

### B.    NIKE'S DUNK TRADE DRESS

22.    The Nike Dunk sneaker began as a basketball sneaker in the 1980s.

23.    Nike introduced the Dunk sneaker in 1986 in connection with its College Colors Program. College basketball players had typically worn single color shoes (e.g., white or black). Nike's College Colors Program offered schools the opportunity to have shoes that mirrored their school colors.  Nike's original "Be True to Your School" advertisement for its College Colors Program is reproduced below.



24.    Nike's College Colors Program became wildly popular.  At that time in the 1980s, college basketball was reaching new heights among a wide age range of athletes and fans.  From east to west, rivalries were strong and network TV brought college hoops, and Nike's Dunk sneakers, to the masses.

25.    The Dunk's adoption and popularity eventually spread beyond basketball culture as the skateboard community organically adopted the Dunk making it a skate icon by the 2000s. From there, the Dunk crossed over sports and fashion, and today it is recognized as one of the most iconic and influential sneakers of all time.

26.    Nike has registered the Dunk trade dress and sole pattern on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 3,711,305 |  | Nov. 17, 2009 | Footwear | 1 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 2 |

27.    Pursuant to 15 U.S.C. § 1065, the Dunk Trade Dress Registrations are incontestable and constitute conclusive evidence of the validity of the Dunk trade dress, Nike's ownership of the Dunk trade dress, and Nike's exclusive right to use the Dunk trade dress.

### C.    NIKE'S ELEPHANT PRINT TRADE DRESS

28.    In addition to the designs of its iconic sneaker silhouettes, Nike elevates the style and fashion of its sneakers through the use and application of unique designs.  The Elephant Print is one of Nike's most famous and popular design features.

29.    Designed by Tinker Hatfield, the Elephant Print trade dress was first introduced as part of the Air Jordan 3 shoe in 1988, setting the installment in the signature line apart from the rest as one of the first performance sneakers to incorporate animal print.

10

1
2
3
4
5
6
7
8
9
10



11
12
13

30.     The Elephant Print was immensely popular and became one of the most significant design elements in footwear history, instantly identifying Nike products in the minds of consumers.

14
15

31.     In response to demand from consumers, Nike began using its Elephant Print trade dress on other sneakers and products.

16
17
18
19
20

32.     One of the most famous uses of the Elephant Print trade dress was on the Nike SB Dunk Low x Supreme in 2002, released in two limited-edition colorways.  The classic color combination and Elephant Print detail has become one of the most sought-after Nike SB Dunk collaborations of all time, currently selling on the secondary market for over $5,000.00.

21
22
23
24
25
26



27
28

33.     Throughout the years, Nike continued to feature the Elephant Print on Dunks and other styles and products.  Examples are shown below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





34.    Today, the Elephant Print has become known as a source-identifier for high-quality designs originating from Nike.

35.    Nike has registered the Elephant Print trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registration identified below (together with the registrations referenced in Paragraph 26, the "Asserted Marks").

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|----------|-----------|-----------|-------|------------|
| 4,137,741 | | May 8, 2012 | Footwear | 3 |

36.    Pursuant to 15 U.S.C. § 1065, the Elephant Print trade dress is incontestable and constitutes conclusive evidence of the validity of the Elephant Print trade dress, Nike's ownership of the Elephant Print trade dress, and Nike's exclusive right to use the Elephant Print trade dress.

### D.   NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL

37.    Nike maintains strict quality control standards for its products bearing the Asserted Marks.   Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

38.    Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill.   Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

### E.   GNARCOTIC'S UNLAWFUL ACTIVITIES

39.    Gnarcotic has wrongfully capitalized on the fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks and/or confusingly similar marks.

40.    Gnarcotic's Infringing Products include at least all variations of sneakers Gnarcotic refers to as "Gnarcotic's Butterfly Effect[s]" and any other footwear that bears the Asserted Marks and/or confusingly similar marks.  Examples of Gnarcotic's Infringing Products are shown below next to the Asserted Marks.

| Asserted Marks | Gnarcotic's Infringing Products |
|---|---|
|  |  |
|  |  |

41.   As shown above, Gnarcotic's Infringing Products are near-verbatim copies of Nike's Asserted Marks.  Consumers agree, as evidenced below.

42.    As such, it is unsurprising that there is already confusion in the marketplace.  Gnarcotic's copying of the Asserted Marks has led to initial interest confusion, post-sale confusion, and confusion in the secondary market.   For example, when Gnarcotic announced the release of the Gnarcotic Butterfly Effect v2's on November 23, 2022, several users expressed their belief that the Butterfly Effect v2's were a collaboration with Nike:

1
2
3
4
5
6
7
8
9
10
11
12



13   43.   As a further example, after Gnarcotic announced the release of the

14  Gnarcotic Butterfly Effect v1's on July 13, 2022, users also expressed their belief

15  that the Butterfly Effect v1's were a collaboration with Nike:

16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





r33lmedia Wait so is it a Nike SB collab?

19w   1 like   Reply

44.    Further, consumers selling Gnarcotic's Infringing Products on the secondary market refer to Gnarcotic's Infringing Products as "Nike Dunks," and "Dunks."



17 minutes ago   (7 days)

GNARCOTIC × RARE × ...        11.5
Gnarcotic SB Dunk Size 11.5 (Fi...



2 days ago   (0 days)

GNARCOTIC                         12
Nike Dunk SB Gnarcotic



7 days ago

GNARCOTIC                         8
Gnarcotic SB dunk low



about 4 hours ago   (14 days)

GNARCOTIC × STREET...        10.5
Gnarcotic Dunk SB 10.5 US



11 days ago   (26 days)

GNARCOTIC                         11
Gnarcotic SB dunks



1 day ago   (26 days)

GNARCOTIC                         12
Brand new DS Gnarcotic sb dun...

18

45.     On information and belief, Gnarcotic promotes and sells the Infringing Products on its website at [https://gnarcotic.com/], and on its Instagram accounts under the handles @gnarcotic and @lilgnar.

46.     Gnarcotic's Infringing Products are not genuine Nike products.  Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize Gnarcotic to make, promote, advertise, market, or sell the Infringing Products.

47.     Gnarcotic's Infringing Products travel in identical channels of trade and are sold to identical consumers as Nike's genuine products.

48.     Gnarcotic has attempted to capitalize on Nike's valuable reputation and consumer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential consumers to believe that Gnarcotic's Infringing Products are associated with and/or approved by Nike, when they are not.

49.     Unless stopped, Gnarcotic's Infringing Products and Gnarcotic's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary markets.

50.     On information and belief, Gnarcotic's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Gnarcotic's Infringing Products and are intended to cause consumers and potential customers to believe that Gnarcotic's business and products are associated with Nike, when they are not.

51.     Gnarcotic's actions alleged herein are also likely to impair the distinctiveness of Nike's Asserted Marks through false association with Gnarcotic, constituting dilution by blurring.

52.    By virtue of the acts complained of herein, Gnarcotic has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Gnarcotic's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

53.    Gnarcotic's actions alleged herein are also willful and deliberate. Gnarcotic was aware of the Asserted Marks and Nike's claims herein at least as of July 25, 2022, when Nike sent a cease-and-desist letter to Gnarcotic.  *See* Exhibit 4. And, in advance of Gnarcotic's announced release of the Butterfly Effect v2 sneakers, Nike sent a second cease-and-desist letter to Gnarcotic on November 23, 2022. *See* Exhibit 5.  Upon information and belief, despite being on notice of Nike's Asserted Marks and claims herein, Gnarcotic continued to promote, sell, and distribute the Accused Products, and continues to release the Accused Products in various colorways.

54.    Gnarcotic's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Gnarcotic is permanently enjoined from its wrongful acts.

55.    Gnarcotic's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Gnarcotic is permanently enjoined from the wrongful acts complained of herein.

## COUNT I: TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

56.    Nike repeats and alleges each and every allegation of paragraphs 1 through 55, above, as though fully set forth herein.

57.   Gnarcotic has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Gnarcotic manufactures, advertises, promotes, distributes, and/or sells in the United States, including the Infringing Products.  Gnarcotic has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

58.   Gnarcotic's use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Gnarcotic or Gnarcotic's Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that Gnarcotic's Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that Gnarcotic is in some way affiliated with Nike.

59.   Nike has no control over the nature and quality of the Infringing Products offered by Gnarcotic, and Nike's reputation and goodwill will be damaged—and the value of the Asserted Marks jeopardized—by Gnarcotic's continued use of the Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion between Gnarcotic's Infringing Products and the Asserted Marks, any defects, objections, or faults found with Gnarcotic's Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, Gnarcotic is liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

60.   As a direct and proximate result of Gnarcotic's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Gnarcotic will continue to use the Asserted Marks and/or confusingly similar marks

and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.   Thus, Nike is entitled to an injunction restraining Gnarcotic and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

61.   Nike is further entitled to recover from Gnarcotic the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Gnarcotic's wrongful acts.

62.   Gnarcotic's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.   *See* Exhibits 4-5.   Gnarcotic's bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Gnarcotic's continued use of Nike's Asserted Marks after being on notice of Nike's claims.   Because of the willful nature of Gnarcotic's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

63.   Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT II:  FALSE DESIGNATION OF ORIGIN /
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

64.   Nike repeats and alleges each and every allegation of paragraphs 1 through 63, above, as though fully set forth herein.

65.   The Asserted Marks are federally registered and entitled to protection under federal and common law.   Nike has extensively and continuously promoted and used the Asserted Marks for over three decades in the United States and worldwide.   Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

66.   Gnarcotic's unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Gnarcotic and/or Gnarcotic's Infringing Products by creating the false and misleading impression that Gnarcotic's Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

67.   As a direct and proximate result of Gnarcotic's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Gnarcotic will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.   Thus, Nike is entitled to an injunction precluding Gnarcotic and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Gnarcotic and the promotion, marketing, offer to sell, or sale of any of Gnarcotic's products.

68.   Nike is further entitled to recover from Gnarcotic the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Gnarcotic's wrongful acts.

69.   Gnarcotic's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 4-5.  Gnarcotic's bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Gnarcotic's continued use of Nike's Asserted Marks after being on notice of Nike's claims.  Because of the willful nature of Gnarcotic's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

70.   Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT III:  TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125(C)

71.     Nike repeats and alleges each and every allegation of paragraphs 1 through 70, above, as though fully set forth herein.

72.     The Asserted Marks have become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

73.     The Asserted Marks became famous before Gnarcotic used the marks.

74.     Because Nike's products bearing the Asserted Marks have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Gnarcotic has used and continues to use in commerce the Asserted Marks or confusingly similar marks in connection with Infringing Products.

75.     Gnarcotic's use of the Asserted Marks and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Asserted Marks in violation of Nike's rights under 15 U.S.C. § 1125(c).  Gnarcotic's wrongful use of the Asserted Marks is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Asserted Marks.

76.      As a direct and proximate result of Gnarcotic's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Gnarcotic will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.   Thus, Nike is entitled to an injunction restraining Gnarcotic and, as

applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

77.    Nike is further entitled to recover from Gnarcotic the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Gnarcotic's wrongful acts.

78.    Gnarcotic's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 4-5.  Gnarcotic's bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Gnarcotic's continued use of Nike's Asserted Marks after being on notice of Nike's claims.  Because of the willful nature of Gnarcotic's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

79.    Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

### COUNT IV:  UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET. SEQ.*

80.    Nike repeats and alleges each and every allegation of paragraphs 1 through 79, above, as though fully set forth herein.

81.    By reason of the foregoing, Gnarcotic has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

82.    As a direct and proximate result of Gnarcotic's unauthorized use of the Asserted Marks and/or confusingly similar marks, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Gnarcotic will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus,

Nike is entitled to: (a) an injunction restraining Gnarcotic and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Gnarcotic and the promotion, marketing, offer to sell, or sale of any of Gnarcotic's products; and (b) restitution of Gnarcotic's profits earned from its unauthorized use of the Asserted Marks and/or any confusingly similar marks in which profits Nike has a vested interest.

### COUNT V: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

83.    Nike repeats and alleges each and every allegation of paragraphs 1 through 82, above, as though fully set forth herein.

84.    Nike was the first to use the Asserted Marks.  As a result of Nike's continuous promotion and sales of products bearing Nike's Asserted Marks for over three decades, Nike's Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products that bear the Asserted Marks.

85.    As a result of the experience, care, and service of Nike in producing the products that bear the Asserted Marks, these products have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Moreover, the Asserted Marks have come to symbolize Nike's respective reputations for quality and excellence.

86.    Gnarcotic, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using Nike's Asserted Marks and/or confusingly similar marks.  Gnarcotic's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of its products and Nike's products.

COMPLAINT

87.    Gnarcotic's acts alleged herein and specifically, without limitation, Gnarcotic's use, manufacture, promotion, distribution, offers to sell, and/or selling in the United States products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

88.    As a direct and proximate result of Gnarcotic's wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, Gnarcotic will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Gnarcotic and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with Gnarcotic and the promotion, marketing, offer to sell, or sale of any of Gnarcotic's products.

89.    Gnarcotic's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 4-5.  Gnarcotic's bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Gnarcotic's continued use of Nike's Asserted Marks after being on notice of Nike's claims.

COMPLAINT

1

## JURY DEMAND

2

3

90.     Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby
demands a trial by jury of all issues so triable.

4

## PRAYER FOR RELIEF

5

WHEREFORE, Nike respectfully prays for:

6

1.      A judgment and order that Gnarcotic has (A) willfully infringed the
Asserted Marks in violation of 15 U.S.C. §1114, (B) used false designations of origin
in violation of 15 U.S.C § 1125(a), (C) diluted the Asserted Marks in violation of 15
U.S.C. § 1125(c), (D) engaged in unlawful, unfair or fraudulent business practices
in violation of §§ 17200, *et seq.*, of the California Bus. & Prof. Code; and (E)
violated Nike's common law rights in the Asserted Marks.

7

8

9

10

11

12

2.      A judgment and order enjoining Gnarcotic and its affiliates, officers,
agents, employees, attorneys, and all other persons acting in concert with Gnarcotic,
during the pendency of this action and permanently thereafter from:

13

14

15

a.      Manufacturing, transporting, promoting, importing, advertising,
publicizing, distributing, offering for sale, or selling any products (including but not
limited to the Infringing Products) under the Asserted Marks or any other marks,
names, symbols, or logos which are likely to cause confusion or to cause mistake or
to deceive persons into the erroneous belief that any products that Gnarcotic caused
to enter the stream of commerce or any of Gnarcotic's commercial activities are
sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated
in some way with Nike or the Asserted Marks;

16

17

18

19

20

21

22

23

b.      Manufacturing, transporting, promoting, importing, advertising,
publicizing, distributing, offering for sale, or selling any products (including but not
limited to the Infringing Products) under the Asserted Marks and/or confusingly
similar marks;

24

25

26

27

c.      Implying Nike's approval, endorsement, or sponsorship of, or
affiliation or connection with, Gnarcotic's products, services, or commercial

28

activities, passing off Gnarcotic's business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring the Asserted Marks or the goodwill associated therewith;

d.     Engaging in any act which is likely to dilute the distinctive quality of the Asserted Marks and/or injures Nike's business reputation;

e.     Representing or implying that Gnarcotic is in any way sponsored by, affiliated with, or licensed by Nike; or

f.     Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

3.     An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4.     An order that Gnarcotic be required to deliver to Nike for destruction any and all shoes, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of its possession, custody, or control bearing the Asserted Marks and/or confusingly similar marks;

5.     An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.     An order that Gnarcotic account to Nike for any and all profits earned as a result of Gnarcotic's acts in violation of Nike's rights,

7.     An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.     An order granting restitution of Gnarcotic's profits earned from its unauthorized use of the Asserted Marks and/or confusingly similar marks in which profits Nike has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

9.      An order granting an award of punitive damages for the willful and wanton nature of Gnarcotic's aforesaid acts under the common law;

10.     An order granting pre-judgment interest on any recovery by Nike;

11.     An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12.     Granting such other and further relief as is just and proper.

Dated:  December 2, 2022          ARNOLD & PORTER KAYE SCHOLER LLP

By:    */s/ Bridgette C. Gershoni*
        Christopher J. Renk (*pro hac vice* to be filed)
          Chris.Renk@arnoldporter.com
        Michael J. Harris (*pro hac vice* to be filed)
          Michael.Harris@arnoldporter.com
        ARNOLD & PORTER KAYE SCHOLER LLP
        70 West Madison Street, Suite 4200
        Chicago, Illinois 60602-4231
        Telephone: (312) 583-2300
        Facsimile: (312) 583-2360

        Michael J. Gershoni (Cal. Bar No. 311192)
          Michael.Gershoni@arnoldporter.com
        Bridgette C. Gershoni (Cal. Bar No. 313806)
          Bridgette.Gershoni@arnoldporter.com
        ARNOLD & PORTER KAYE SCHOLER LLP
        601 Massachusetts Ave. NW
        Washington, DC 20001
        Telephone: (202) 942-6745
        Facsimile:  (202) 942-5999

        *Attorneys for Plaintiff Nike, Inc.*